# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ARZAGA, | Case No.  1:10 cv 00369 AWI GSA PC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| SGT. REED, | (ECF No. 52) |
| Defendant. | |
| | OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).   Pending before the Court is Defendant's motion for summary judgment. Plaintiff has opposed the motion.[1]

///

---

[1] On June 30, 2011, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988)  (ECF No. 14.)  The order was re-served on Plaintiff on October 30, 212, in response to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012)  (ECF No. 55.)

I.    **Procedural History**

This action proceeds on the original complaint.  Plaintiff is currently housed at Kern Valley State Prison in Delano.  The events giving rise to the claims at issue in this action occurred at California Correctional Institution Tehachapi (CCI).  Plaintiff names as the defendant in this action Sergeant Reed, an employee of the California Department of Corrections and Rehabilitation (CDCR) at CCI.  Plaintiff claims that Defendant Reed placed him in a strip cell in retaliation for filing an inmate grievance.  Plaintiff also claims that Sergeant Reed subjected him to unconstitutional conditions of confinement.    In an order entered on June 13, 2011, the Court clarified Plaintiff's claims, dismissing his Eighth  Amendment mental health care claim, and proceeding on Plaintiff's retaliation and conditions of confinement claims.  Defendant answered, and filed the motion for summary judgment which is now before the Court.  Plaintiff has filed a response.

II.    **Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, <u>Anderson</u>, 477 U.S. at 248; <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Matsushita</u>, 475 U.S. at 588; <u>County of Tuolumne v. Sonora Community Hosp.</u>, 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>Giles v. Gen. Motors Acceptance Corp.</u>, 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference

may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

### A.   Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995)(quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

In his complaint, Plaintiff alleges that on September 23, 2007, he filed an inmate grievance against Defendant Reed "for denying me basic human needs." (Compl. ¶ IV.) Plaintiff alleges that Reed retaliated against Plaintiff by placing him on strip cell status. Plaintiff

"constantly tried to talk to Sgt. Reed to please let me out of the freezing cell, but he just laughed at me and told me to try to 602 him again, and boasted that he was part of the 'green wall,' a gang of corrupt officers whose sole purpose is to intimidate/attack and hurt prisoners." <u>Id.</u>

Defendant supports his motion with portions of Plaintiff's deposition, the declaration of I. Alomari, and exhibits attached thereto. Defendant argues that the evidence establishes, beyond dispute, that Plaintiff filed his inmate grievance after being placed in the strip cell, and therefore there could not be a causal connection between the filing of an inmate grievance and placement in the strip cell.

Defendant submits as Exhibit F to his motion the declaration of Appeals Coordinator I. Alomari. Alomari declares that "I am employed by the California Department of Corrections and Rehabilitation (CDCR) as the Appeals Coordinator at the California Correctional Institution (CCI) in Tehachapi, California, which receives inmate appeals submitted for formal level review at the institutional level. I am familiar with CDCR's inmate appeals process and the processing of inmate appeals at CCI." (Alomari Decl. ¶ 2.) Regarding the grievance at issue in this case, Alomari declares the following.

> At the request of Defendant's counsel, I have completed a search in our Inmate Appeals Tracking System for institutional appeals accepted for review from Plaintiff, Daniel Arzaga (#T-82899), which alleged that Defendant Correctional Sergeant Reed retaliated against him by placing him in an unsanitary cell without water, linen, lighting, or clothing, in September 2007.
>
> A review of the IATS reveals that on October 30, 2007, the CCI Appeals Office received an appeal complaining of the allegations in paragraph 6. However, the appeal was screened out because Plaintiff submitted the appeal to the incorrect level of review. Additionally, that appeal did not mention Sergeant Reed. The CCI Appeals Office does not retain copies of screened out appeals and does not possess a copy of this appeal.

5

On November 14, 2007, our office received Appeal Log No. CCI-0-07-2991.  In the appeal, Plaintiff alleged that from September 23, 2007 to September 27, 2007, he was housed in a cell nude, without a mattress, cup for water, blanket, or toiletries.  Plaintiff dated the appeal November 5, 2007.  Attached as Exhibit A is a true and correct copy of Appeal Log No.  CCI-0-07-2991.

In sum, the CCI Appeals Office did receive two appeals from Plaintiff regarding the above-referenced allegations in paragraph 6, but one was submitted in October 2007, and the other in November 2007.

(Id. ¶¶ 6-9.)   Defendant also submits excerpts from the deposition of Plaintiff. Regarding the filing of the inmate grievance, Plaintiff testified as follows.

A.  I haven't filed a 602 about the cell extraction.

Q.  So it's just the conditions of confinement?

A.  Yes.

Q.  Do you know when you filed it?

A.  I filed it within the time limits.

Q.  I'm not challenging your exhaustion.  That's not an issue.  I am just wondering when you actually filed it.  Did you file it once you were brought back to your housing unit?

A.  The first thing I did as soon as I got back to a housing unit, that's the first thing I did, was started writing.  Because that's what was recommended to me by the whistle-blowers, was that I needed to exhaust those state remedies as soon as possible if they are going to be able to go to court and testify on my behalf.

Q.  So this is the time line.  Cell extraction on the 23rd.  Brought to observation.  So you were there on the 23rd, 24th, 25th, 26th, 27th.  Brought back to your housing unit on the 28th or 27th?

A.  I believe it was the 28th.

Q.  And then that day or soon after you filed the 602?

6

A. Yeah.  As soon as I could get ahold of a pen and as soon as I got ahold of paper, I started to exhaust those remedies.

Q. So you didn't do it when you were in observation; you did it when you got back?

A. There's no way you are going to be able to put a 602 in Reed's management program if you don't even have a pair of boxers.

Q. And you filed a staff complaint and then it was converted to a 602?

A. I filed them both.  Staff complaint, policeman's conduct, and a 602.

Q. But there was one decision on it, right?  That was the 602?

A. Yes.

(Pltf. Dep. 33:2-34:18.)   The Alomari declaration and Plaintiff's deposition clearly establish that Plaintiff did not file his inmate grievance until after he was released from strip cell status.  Plaintiff's opposition consists of four pages of argument.  Plaintiff fails to submit any evidence in opposition to Defendant's motion.  Plaintiff's opposition is made under the penalty of perjury, and will therefore be construed as a declaration in opposition to the motion for summary judgment.  However, Plaintiff makes no reference to the filing of an inmate grievance.

The complaint on which this action proceeds is made under the penalty of perjury, and will also be considered as a declaration supporting Plaintiff's opposition to the motion for summary judgment.  In the complaint, Plaintiff alleges that "while being housed in Tehachapi State Prison on Sept. 23, 2007 I filed a grievance form against Sgt. Reed for denying me basic human needs.  Sgt. Reed retaliated by putting me on strip cell status." (Compl. ¶ IV.)  This allegation directly contradicts Plaintiff's sworn testimony in his deposition that he did not file a grievance regarding his cell extraction, and that he did not file the grievance until after he was

released back to his housing unit. Plaintiff cannot create an issue of fact by a declaration contradicting his own deposition testimony. Unless the damaging testimony is shown to have resulted from mistake or confusion, the contradictory declaration creates no genuine issue of fact on a summary judgment motion. See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999)(recognizing, without endorsing, "sham affidavit" holdings in every circuit); Van Asdale v. International Game Tech., 577 F.3d 989, 998 (9th Cir. 2009).

Plaintiff makes no showing that the discrepancy resulted from confusion. The deposition testimony was clear. Plaintiff was not confused as to the date in his deposition testimony, and testified that it would not have been possible to file the grievance while on strip cell status, as "there's no way you are going to be able to put a 602 in Reed's management program if you don't even have a pair of boxers." (Pltf. Dep. 34:7-8.) The Alomari declaration clearly establishes that the grievance was filed after Plaintiff was placed in the strip cell, and Defendant Reed could not, therefore, have placed Plaintiff on strip cell status in retaliation for the filing of an inmate grievance. Defendant Reed is therefore entitled to judgment on this claim.

**B.    Conditions of Confinement**

In the complaint, Plaintiff alleges that Defendant put Plaintiff on strip cell status on September 23, 2007. Plaintiff alleges that he was subjected to the following conditions.

> No running water, unable to flush the toilet, and I was given no clothing of any kind, I was bare naked. Further, Sgt. Reed's direct orders kept me from getting a cup to drink water, no toothpaste or toothbrush, no soap or toilet paper, no sheets or blankets, the cell was filthy and I had nothing to clean it with the cell had no lighting and it was extremely cold, my lunch which came in a paper bag was thrown into my cell wet & torn, I was forced to eat food off the floor, which was filthy, and I was never given a spoon, this inhuman treatment was unbearable, I constantly tried to talk to Sgt. Reed to please let me out of the freezing cell, but he just laughed at me.

8

(Compl. ¶ IV.)    Plaintiff also alleges that he "got sick with the flu" as a result of being housed in the cold cell.  When Plaintiff asked Sgt. Reed to see the doctor, Reed responded that "you're a mental health patient."  Plaintiff then requested to see a psychiatrist, which Reed denied, calling Plaintiff "vile things."  Plaintiff alleges that he was kept in this condition for five days.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff.  Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The routine discomfort in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry.  "Those deprivations denying 'the minimal civilized measure of life's necessities are grave enough to form the basis of an Eighth Amendment violation.'"  Id. (quoting Rhodes v. Chapman,  452 U.S. 337, 347 (1981).  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "The circumstances, nature, and duration of a deprivation of one of these necessities must be considered in determining

9

whether a constitutional violation has occurred.  The more basic the need, the shorter the time it can be withheld."  <u>Johnson v.Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000).

Defendant supports his motion with the declarations of Defendant, Sergeant R. Redenius, C/O B. Gerber, J. Walsh, Ph.D. and exhibits attached thereto.  Defendant also submits portions of Plaintiff's deposition testimony.

**1.    <u>September 23, 2007 Placement on Suicide Watch</u>**

Although the complaint treats the placement in strip cell status as a single event caused by Sgt. Reed, Defendant's evidence indicates that Plaintiff was placed on suicide watch on September 23, 2007, and then removed from suicide watch and placed on modified program on September 24, 2007.  Regarding the circumstances of Plaintiff's placement on suicide watch on September 23, 2007, Sgt. Redenius declares that

> The last position that I held within the CDCR prior to my retirement was that of a Sergeant in the Security Housing Unit (SHU) at the California Correctional Institution (CCI), in Tehachapi, California.  As a Correctional Sergeant, my responsibilities were to supervise Correctional Officers and inmates, train staff, ensure the safety and security of inmates and staff, and address inmate misconduct and disciplinary issues.

> On September 23, 2007, plaintiff Daniel Arzaga (T-82899) was housed in the Security Housing Unit Facility at A4B at CCI.

> Dinner is served to inmates in the SHU at approximately 5:00 p.m. or a little earlier nightly, on plastic food trays delivered to each inmate in his cell.  Once the meals are delivered, after a short interval, staff collect the food trays and trash, using the food port in the cell door to deliver and pick up items.

> At about 6:35 p.m. on September 23, 2007, during the post-meal tray pickup, inmate Derian (P-50643), Arzaga's cellmate, refused to return his food tray to staff.  Inmates are required to return their food trays because the tray, or pieces of it, can be fashioned into weapons.  For this reason, each tray is inspected upon receipt to determine if it has been altered or damaged.

10

> Although Arzaga relinquished his food tray, he refused to comply
> with officers' orders to cuff up and to return the food tray, and
> being given multiple opportunities to comply, Arzaga and his
> cellmate Derain were forcibly extracted from their cell.
>
> After Arzaga and Derian were removed from their cell, they were
> decontaminated due to O.C. pepper spray exposure, using cool
> water from a hose, and medically cleared for re-housing.
>
> At approximately 10:00 p.m. on September 23, 2007, both inmates
> stated that they were suicidal.  Consequently, they were put on
> suicide watch in the IV-B medical clinic.

(Redenius Decl. ¶¶ 3-10.)

The procedure for an inmate who has been placed on suicide watch is to provide a no-tear

mattress and no-tear blanket, along with paper clothing. While on suicide watch, the inmate is

not provided with any items that could be used to harm the inmate.  Once the inmate is removed

from suicide watch, he is placed on a five day step-down program.  For each of the five days, a

mental health professional visits the inmate in his cell and evaluates the inmate's behavior, mood,

cognition, speech and suicidal ideations.  The cleanliness of the inmate's cell and personal

hygiene are also evaluated.  (Walsh Decl. ¶¶4,5.)

Regarding Defendant's involvement in placing Plaintiff on suicide watch, Defendant

declares as follows.

> On September 23, 2007, plaintiff Daniel Arzaga (T-82899) was
> housed in the Security Housing Unit at CCI. . .
>
> I worked second watch at the prison, which is from 6:00 a.m. to
> 2:00 p.m.  Thus, I was not at the prison at the time that plaintiff
> and his cellmate were extracted from their cell in the evening of
> September 23, 2007.  Attached as Exhibit A is a true and correct
> copy of my time sheet, which shows that I worked from 6:00 a.m.
> to 2:00 p.m. on September 23, 2007, and did not work overtime
> that day.

> When I arrived at the prison at 6:00 a.m. on the next day,
> September 24, 2007, I was informed of the events involving
> plaintiff the prior evening.  At that time, plaintiff had already been
> placed on modified program in the SHU.

(Reed Decl. ¶¶4, 6-7.)

Defendant Reed's declaration and timesheets attached thereto establish that he was not present after 2:00 p.m., and could not have ordered Plaintiff to be placed on suicide watch.  The declaration of Sgt. Redenius establishes that the cell extraction occurred at approximately 6:35 p.m. on September 23, 2007, over four hours after Defendant's watch ended.  In his opposition, Plaintiff makes no argument, and offers no evidence that, Defendant was present during the cell extraction or was present when Plaintiff was placed on suicide watch.

Although Plaintiff does allege in his complaint that "Sgt. Reed retaliated by putting me on strip cell status," such an allegation is vague as to time and date.  Plaintiff makes no distinction in his complaint regarding placement on suicide watch and further placement in management or "strip cell" status.

Although Defendant Reed's liability does not turn on whether he was present, the declaration of Sgt. Redenius establishes that Plaintiff was placed on suicide watch because he indicated he was suicidal.  Plaintiff presents no evidence to the contrary.  Judgment should therefore be entered in favor of Defendant Reed regarding the placement of Plaintiff on suicide watch on September 23, 2007.

## 2.   <u>Management Cell Conditions September 24, 2007 to September 30, 2007</u>

Defendant argues that the evidence shows that Plaintiff was placed on a modified program with various security precautions because he was preparing to assault staff.  Regarding

Plaintiff's placement in the management cell, Defendant Reed declares as follow.

On September 23, 2007, plaintiff was placed on Security Triangle Precaution status for a period of 10 days, because of his conduct on the evening of September 23, 2007.  Security Triangle Status is imposed when staff have reason to believe that an inmate will be disruptive or assaultive when removed from a cell.  The Security Triangle is a device designed to prevent an inmate from refusing to surrender his handcuffs, and consists of a waist chain connected to a metal triangle, to which the handcuffs are affixed.

Based on plaintiff's refusal to submit to handcuffs on the evening of September 23, 2007, necessitating a cell extraction, as well as his plotting to assault staff, placing him on Security Triangle Status was warranted.  Attached as Exhibit B is a true and correct copy of a CDC Form 128B chrono dated September 24, 2007, regarding the Security Triangle Precaution Status.

On September 24, 2007, plaintiff was also placed on Food/Cuff Security Precaution for 72 hours, or until September 28, 2007.

While on Food/Cuff Security Precaution, with the exception of emergencies such as fire evacuation, an inmate does not leave his cell for any reason.  All supplies are delivered through the food and cuff port in the cell door, and the inmate is provided three sack meals per day.  In order to receive the sack meals, the inmate is required to kneel at the rear of the cell, facing the rear wall while staff places the sack into the cell through the food port.   Attached as Exhibit C is a true and correct copy of a CDC Form 128B chrono dated September 24, 2007, regarding the Food/Cuff Port Security Precaution Status.

Additionally, Plaintiff was placed on Leg Iron status on September 24, 2007, for 10 days.  Plaintiff was placed on this modified program because there was reason to believe that he would kick or attempt to kick staff, and because he was perceived as being uncooperative.  Attached as Exhibit D is a true and correct copy of a CDC Form 128B chrono dated September 24, 2007, regarding the Leg Iron security status.

Although plaintiff was on modified program, his cell contained a sink with water.  There is a modified program that cuts water to a cell; however, that is used when it is believed that an inmate will misuse plumbing, such as by flushing contraband or flooding the cell.  Inmates who are placed on this modified program are issued

a 128B chrono, similar to Exhibits B-D of this declaration. Plaintiff was not placed on water restriction at this time and had unfettered access to an operable toilet and sink.

The cell that plaintiff was placed in, cell #8B-102, is a management cell in Facility IV-B SHU.  It is the same temperature as any other cell, and has the same amount of lighting.  No mechanism exists to alter the heating of lighting in an individual cell.

Moreover, should an inmate soil the floor of his cell while on modified program, such as by throwing feces on the floor or wall, the cell is summarily cleaned, just like any other cell in the facility. When on modified program, staff retrieve all trash from the inmate's cell on a daily basis and make a note of any additional debris or biohazards that need to be cleaned.

Although I was the Sergeant of Facility B, I was not present for either the initial cell extraction, or plaintiff's placement in the unit, nor did I place plaintiff on the behavioral modification programs. Additionally, my role in the facility was supervisory.  Correctional Officers and other staff were responsible for providing plaintiff with food and linens.  There is no reason to believe that plaintiff was denied these items.  I did not order any staff to deprive plaintiff of food or linen, and I would have counseled and potentially disciplined any staff who did so.

The modified program was instituted because of plaintiff's behavior, and was lifted as soon as it was determined that plaintiff no longer posed a risk to the safety of himself or others.  I do not believe that I had any contact with him after he was removed from the modified program.

(Reed Decl. ¶¶ 11-20.)

Dr. Walsh declares that "attached as Exhibit A is a true and correct copy of plaintiff's Psychiatric Technician Notes from September 24, 2007, to September 30, 2007, that were reviewed and signed by Jack Alvod, Ph.D.  This mental health record indicates the condition of plaintiff's cell was fair, and plaintiff's personal hygiene was noted as fair."  (Walsh Decl. ¶6.) Exhibit A establishes that on September 25th, Plaintiff was alert and his mood was appropriate.

14

There are no other notations for that date.  On September 26th, Plaintiff was alert, his mood was depressed, his insight/judgment was poor, his personal hygiene and cell cleanliness were fair, he did report a mental health  issue and was referred to a case manager or psychiatrist.  Plaintiff did not have suicidal or homicidal ideations.  There are no notations for September 27th.  On September 28th, Plaintiff was alert, his mood was appropriate, his cell cleanliness and personal hygiene were fair, he reported no mental health issues or concerns, was not referred to a case manager or psychiatrist and had no suicidal or homicidal ideations.  On September 29th,  Plaintiff was alert, his mood was appropriate, his cell cleanliness and personal hygiene were fair, he reported no mental health issues or concerns  and had no suicidal or homicidal ideations.  On September 30th, Plaintiff was alert, his mood was appropriate, his cell cleanliness and personal hygiene were fair, he reported no mental health issues or concerns and had no suicidal or homicidal ideations.

The Court finds that Defendant has met his burden on summary judgment with regard to Plaintiff's conditions of confinement on management cell status.  Defendant's evidence establishes that Plaintiff was placed on management cell status because of his behavior, and was monitored while on management cell status.  Defendant's evidence establishes that Plaintiff was not subjected to conditions of confinement such that they violated the Eighth Amendment.  Further, Defendant's evidence establishes that he was not personally involved, and did not know of and disregard a serious risk to Plaintiff's health or safety, resulting in injury to Plaintiff.

In his opposition, Plaintiff argues that Defendant "willfully, dilibertly[sic] held the plaintiff against his will completely in the nude confined to a cell in his 'Reed's' management program, and further moore [sic] taunted the plaintiff confining him to an insanitary [sic] cell for days at a time, for the plaintiff attempting to exhaust his state remedies while being held captive

15

in Reed's management program." (Opp'n. 2:11-22.)   The complaint, also treated as a declaration in support of Plaintiff's opposition, contains similar conclusory statements that Defendant was responsible for Plaintiff's inhumane living conditions.   Plaintiff must tender evidence of specific facts in support of a contention that an actual dispute exists.   Rule 56(c); Matsushita, 475 U.S. at 586 n. 11.   To demonstrate a genuine issue, Plaintiff "must do more than simply show that there is some metaphysical doubt as to material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

Here, the Court finds that the record taken as a whole clearly establishes that Defendant did not know of and disregard a serious risk to Plaintiff's health or safety, resulting in injury to Plaintiff.  Defendant's evidence demonstrates that he was not personally involved in the decision to place Plaintiff on suicide watch or management cell status, and did not order or direct any subordinates to mistreat Plaintiff.  The evidence establishes that Plaintiff was treated in accord with policies and procedures.  The evidence establishes that the only conduct by Defendant was in his supervisory capacity.   Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal , 556 U.S. 662, 673 (2009). Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must come forward with specific evidence that Reed violated the Constitution through his own individual actions.  Id. at 673.  In other words, to defeat Reed's motion for summary judgment, Plaintiff must come forward with evidence that links Reed with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff has not done so.  Judgment should therefore be entered in Defendant's favor.

///

16

### III.    Conclusion

Defendant has come forward with evidence that he could not have placed Plaintiff in a management cell for filing an inmate grievance as the grievance was filed after Plaintiff was placed in the management cell.  Defendant has come forward with evidence that he was not on duty when Plaintiff was placed on suicide precaution on September 23, 2007.  Defendant has also come forward with evidence that he was not responsible for placing Plaintiff in a management cell, that the conditions in the management cell did not violate Eighth Amendment standards, and that his only conduct was in a supervisory capacity.  Plaintiff has not offered any evidence to the contrary on any of the above claims.  There is therefore no disputed issue of material fact.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be granted, and judgment be entered in favor of Defendant and against Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

1

2              IT IS SO ORDERED.

3                                          Dated:   __**June 28, 2013**__        _____/s/

4  __**Gary S. Austin**__

5                                          UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          18